IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 11 2024

KEVIN R. WEIMER, Clerk
By: _____ Deputy Clerk

LORI TULLOS, Pro se
VIRGINIA MCFADDIN, Pro se

Plaintiffs

No. ___1:24-CV- 4628___

v.

BRAD RAFFENSPERGER in his
official capacity, acting as the Georgia
Secretary of State

BRIAN KEMP, in his official
capacity, acting as the Governor of Georgia

Defendants

## VERIFIED COMPLAINT FOR EMERGENCY PERMANENT INJUNCTION AND DECLARATORY JUDGMENT

### INTRODUCTION

1.    This is an Action brought under 52 USC 10307 and 42 USC 1983, seeking

this Court issue Injunction and Declaratory Judgment to protect the Plaintiffs

from being individually disadvantaged in maintaining the effectiveness of their

vote, and against the abridgment, deprivation, and dilution of their fundamental,

secured rights to vote and to privacy under the First, Fourth and Fourteenth

Amendments of the United States ("US") Constitution and Articles I, II, and III of

the Georgia ("GA") Constitution. This Action challenges the equipment, policies

and processes employed by the Defendants to conduct elections in the State of GA,

the practices of which have caused the deprivation, dilution and abridgment of the

Plaintiffs secured rights.

2.    Plaintiffs assert that the deprivation of their secured rights to vote and to

privacy are being caused by the Defendants' negligent performance of,

malfeasance, and misfeasance of duty, under color of authority or office, in their

seemingly utter disregard to comply with the ministerial and fiduciary duties

mandated by Federal and State election and privacy laws and the Constitutions.

3.    This Action is filed in conjunction with Plaintiffs' Motion for Emergency

Interlocutory Injunction and/or Restraining Order and respectfully requests this

Court grant and make permanent the Order requiring the Defendants' immediate

cessation of the use of GA's current computerized/electronic voting, management,

and voter registration database systems.

4.    Plaintiffs have provided this Court with evidence and analysis that proves

GA's computerized/electronic voting systems and elections management systems

are illegally able to, and are connected to the internet during elections, in violation

of Federal and State laws, which the Defendants have been aware of, and seem to

be party to, yet they continue to employ these illegal systems.

5.    Plaintiffs have provided this Court with evidence and analysis that appears

to prove the Defendants' are contributing to the dilution of their right to vote due

2.

to maladministration, misfeasance and negligence in the Defendants' lack of statutorily mandated voter registration database maintenance, and what appears to be illegal, intentional tampering and manipulation of GA's voter registration database.

6.   Plaintiffs have provided this Court with evidence and analysis that appears to prove the Defendants are allowing for Plaintiffs' Personal Identifying Information ("PII") to be illegally shared, in violation of Federal and State laws and Constitutions, with third parties and adversarial foreign actors via GA's voter registration database, and the Electronic Registration Information Center ("ERIC") systems.

7.   Plaintiffs are seeking this Court issue Injunction requiring the Defendants to immediately discontinue the use of any computer/electronic populated and/or updated voter registration database and return to paper poll books as this would be the only way to ensure their votes are not diluted, or deprived altogether, due to Defendants' negligence, misfeasance or malfeasance of duty. Plaintiffs have provided this Court evidence that appears to prove the Defendants have not only refused to address, but have exacerbated the manipulation of the voter registration database.

8.   Plaintiffs have proven, and this Court has determined (see Exhibit A), that the computerized/electronic voting system implemented by the Defendants does not allow for ballots to print that are compliant with Federal and State laws and

3.

that the votes contained on those ballots are considered of no effect for Federal or State elections pursuant to the laws and Constitutions.

9.     Plaintiffs assert that the hand-counting of votes printed on the original cast ballots is the only lawful form of counting votes for elections conducted in GA, as well as the only way to assure the Plaintiffs are not deprived of their fundamental right to vote.

10.    Plaintiffs have proved the granting of their requested Order is necessary and of vital public interest, to ensure the abeyance of the National Security Threat GA's voting systems components and processes have been characterized to be by Federal law and the last three Presidential Administrations.

11.    Plaintiffs allege that the Defendants are in violation of the Federal Information Security Management Act ("FISMA"), and various Presidential Executive Orders ("EO") not only by utilizing elections equipment made in China, but by ignoring the warnings of the Department of Justice ("DOJ"), Federal Bureau of Investigation ("FBI"), and the Cybersecurity and Infrastructure Security Agency ("CISA") of various threat attacks intended by adversarial foreign countries during the 2024 General Election.

12.    Plaintiffs assert that Defendants' allowing for ballots to be accepted beyond the closing of the polls and votes being counted beyond midnight on the 'set day of election', no matter their reasons or excuses, is unconstitutional and in violation of Federal and State laws. The Defendants have a ministerial duty to adhere to

4.

Federal and State laws and Constitutions which mandate the set day of election and violating those mandates disadvantages the Plaintiffs' maintaining the effectiveness of their vote and causes the deprivation of the Plaintiffs' right to vote.

13.    Plaintiffs assert that the Defendants' ongoing actions which underlie this Complaint constitute misfeasance of duty, dilution and deprivation of Plaintiffs' secured rights protected by the First, Fourth and Fourteenth Amendments of the US Constitution. Defendants are, under color of office or authority, committing ongoing violations of Federal and State laws and Constitutions. The Defendants' improper, negligent performance of lawful, mandated acts, proves their outright disregard of the laws and Constitutions. The damages suffered by the Plaintiffs based on the actions, or inaction, of the Defendants' have resulted in irreparable injury to the Plaintiffs of being deprived of their right to vote and to privacy, the deprivation of which is violative of the First, Fourth and Fourteenth Amendments. See

*Elrod v. Burns, 427 U.S. 327, 373 (1976),"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."* and

*Martin v. Kemp, 341 F. Supp. 3D 1326, 1340 (N.D. Ga. 2018), "The court finds that plaintiffs have established irreparable injury as a violation of the right to vote cannot be undone through monetary relief and, once the election results are tallied, the rejected electors will have been disenfranchised without a future opportunity to cast their votes."*

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over Plaintiffs' Complaint under 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiffs'

subsequent claims, which are based on State law, under 28 USC § 1367. The Court

is also empowered to issue declaratory and injunctive relief, should it find such

relief warranted, pursuant to 28 USC § 2201 and 28 USC § 2202. See also *Corey v.*

*Jones, 484 F. Supp. 616, 618 (S.D.Ga.1980)*, (finding that declaratory judgments

are particularly well suited to resolving constitutional questions), *aff'd in part,*

*rev'd in part on other grounds, 650 F.2d 803, 807 (5th Cir. Unit B July 1981)*. The

jurisdiction of the District Court over this action is founded on the Act of Congress

of June 25, 1948, c. 646, Section 1, 62 Stat. 932, 28 U.S.C.A. § 1343, which

provides in part as follows:

*"Civil rights. The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:*

*"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."*

15.   Venue in the United States District Court for the Northern District of

Georgia is proper pursuant to 28 USC § 1391.

## PARTIES

16.   Plaintiff, Lori Tullos, as an individual who is a registered voter, taxpayer

and resident of Morgan County, Georgia, residing at 2011 Cedar Grove Road,

Buckhead, Georgia, 30625.

17.   Plaintiff, Virginia S. McFaddin, as an individual who is a registered voter,

taxpayer and resident of Morgan County, Georgia, residing at 110 Tuell Court,

Madison, Georgia, 30650.

18.     Defendant, Brad Raffensperger, acting in his official capacity, as the

Secretary of State for the State of Georgia. At all times relevant hereto he acted in

concert with the other Defendant and under color of office. He is sued in his official

capacity.

19.     Defendant, Brian Kemp, acting in his official capacity, as the Governor of

the State of Georgia. At all times relevant hereto he acted in concert with the

other Defendant and under color of office. He is sued in his official capacity.

## COMPLAINT

20.     WHEREAS, Plaintiffs maintain that the Defendants are not strictly adhering

to the Federal and State election laws, mandates, rules and regulations, which has

resulted in the deprivation, dilution, and abridgment of the Plaintiffs' rights.

Defendants are depriving the Plaintiffs of their fundamental rights protected by

the First, Fourth and Fourteenth Amendments of the US Constitution and

Articles I, II, and III, of the GA Constitution. The results of these deprivations are

causing the Plaintiffs irreparable injury and harm and is directly attributable to

the actions, or lack thereof, by the Defendants. This Court has determined that the

deprivation of voting rights is irreparable injury, and violates both First and

Fourteenth Amendments. See

   *Duncan v. Poythress, 515 F. Supp. 327 (N.D. Ga.), aff'd, 657 F.2d 691 (5th Cir. 1981)*
*("Duncan"),"The 'liberty' protected from state impairment by the due process clause of the*
*U.S. Const, amend. 14 includes the freedoms of speech and association guaranteed by U.S.*

7.

*Const. Amend 1. These freedoms under U.S. Const. Amend 1 extend to political activities such as running for elective office. State election practices must therefore serve legitimate state interest narrowly and fairly to avoid obstructing and diluting these fundamental liberties."*

21.    WHEREAS, Plaintiffs maintain that Defendants aware that GA's elections

systems are illegally able to, and are connected to the internet during elections,

Plaintiffs have provided this Court evidence proving the Defendants have known

that GA's election systems are in fact connected to the internet and that this has

resulted in the remote access by malicious actors who deleted election information

during an election cycle (see Exhibit B, Tab 1, pages 6 through 12). Plaintiffs

argue that GA's electronic/computerized voting system was *specifically designed*

for remote access and, in fact, has WiFi and/or Ethernet network cards built in to

them in violation of Help America Vote Act ("HAVA"), 52 USC 20971, Elections

Assistance Commission ("EAC") Voluntary Voting System Guidelines ("VVSG")

2.0, O.C.G.A. 21-2-300(a)(3) (which requires GA's electronic election

systems to be in compliance with EAC guidelines), and GA Rule 183-1-12-.05(2).

See,

*52 USC 21081(b) et. seq. - **Voting System Defined** – "the total combination of mechanical, electromechanical, or electronic equipment (including the software, firmware, and documentation required to program, control, and support the equipment) that is used.*

*GA Rule 183-1-12-.02 (o) "Voting system" or "voting system components" shall include electronic ballot markers, printers, ballot scanners, election management systems, electronic poll books, and voter access cards.*

*GA Rule 183-1-12-.05 (2) – Electronic ballot markers, ballot scanners, and election management systems shall not be connected to the internet,* and

*External Network Connections - VVSG 2.0 does not permit devices or components using external network connections to be part of the voting system. The external network connection leaves the voting system vulnerable to attacks, regardless of whether the*

8.

*connection is only for a limited period or if it is continuously connected.*

Plaintiffs have proven that the entirety of GA's elections systems (see Federal and State definitions above) are, in fact, connected to the internet.

22.   WHEREAS, Plaintiffs maintain that the Defendants had a ministerial duty to ensure GA's electronic voting systems were compliant with Federal and State law prior to purchase and implementation. Plaintiffs argue that the patent for Dominion Voting Systems (Patent No.: US 9,202,113 B2 dated Dec. 1, 2015) alone should have been sufficient evidence for the Defendants to know that this voting system does not comply with Federal and State laws, thereby making elections conducted utilizing these systems illegal. The Dominion patent shows that not only does GA's electronic voting system have internet access capability built in to its components, and the necessity of being connected to a network, but that it was specifically designed for remote incursion in order to change votes. The most notable of the patent excerpts read:

*Column 4, lines 46-66, shows that this voting system is designed "to allow votes to be changed remotely." (Systems that are truly air-gapped are incapable of connecting with other networks and are unable to be accessed remotely, though this 'air-gapped' fallacy is exactly what Defendants attest to);*

*Column 6, lines 9-18, shows the software can be manipulated so the "tabulators can 'selectively recognize' specific ballot areas" which allows for votes, on a candidate by candidate basis, to be manipulated and changed both locally or remotely;*

*Column 6, lines 19-37, proves this system can be programmed "to allow for any marking, by way of pixel count settings, to count as a 'vote' or count as a 'no vote' for each voter selection area of each ballot." This 'benefit' allows for bad actors, whether on site or remotely, to change a completely marked in selection as a 'no vote' or a blank selection as a 'vote' without detection;*

*Column 6, lines 38 and 39, show that each tabulator can be programmed separately;*

*Column 8, lines 46-50, show that an 'election official' can change a vote;*
   *Column 9, lines 5-11, proves this system allows 'election officials' change votes via internet connection;*
   *Column 9, lines 43-45, shows that 'network interface hardware' is built in to this voting system and that it includes wired and/or wireless interface cards;*
   *Column 9, lines 37-40, shows that an 'election official' can remotely change an adjudicated vote (which can only happen if the system is connected to the internet);*
   *Column 14, lines 29-33, shows that a central server computer can determine whether a vote needs 'adjudicated' and that this 'adjudication' can be performed remotely.*

23.   WHEREAS, Plaintiffs maintain that the ability for GA's elections systems to

connect to any internet/network causes serious system security issues and due to

this, Federal and State law prohibit our elections systems from being *able* to

connect. This determination has, in fact, already been made by this Court in an

interim ruling by Judge Totenberg (see Exhibit A) in which she determined the

Dominion Voting System presented,

   *"serious system security vulnerability and operational issues that may place Plaintiffs and other voters at risk of deprivation of their fundamental right to cast an effective vote that is accurately counted.", see Curling v. Raffensperger, Case 1:17-cv-02989-AT, 493 F. Supp 3d 1264 (2020) ("Curling").*

Within this same ruling, Judge Totenberg also determined,

   *"The Court's Order has delved deep into the true risks posed by the new BMD voting system as well as its manner of implementation. These risks are neither hypothetical nor remote under the current circumstances."*

Plaintiffs argue that, based on these determinations by this Court, Defendants

were required by law to immediately discontinue the use of GA's electronic voting

system pursuant to O.C.G.A. 21-2-368(c) and return to hand-marked, hand-

counted, paper ballots at the time that ruling was made. O.C.G.A. 21-2-368(c)

reads:

*"No kind of optical scanning voting system not so approved shall be used at any primary or election and if, upon the reexamination of any optical scanning voting system previously approved, it shall **appear** that the optical scanning voting system so reexamined **can no longer be safely or accurately used by electors at primaries or elections as provided in this chapter because of any problem concerning its ability to accurately record or tabulate votes, the approval of the same shall immediately be revoked by the Secretary of State; and no such optical scanning voting system shall thereafter be purchased for use or be used in this state."* (emphasis added).

Plaintiffs argue that the term, "*appear*" as used in this statute, is a very low bar to achieve, and that this term was specifically chosen by the GA Legislature to ensure against any electronic voting systems causing the Plaintiffs and People of GA being disadvantaged in maintaining the effectiveness of, or being denied, their right to vote.

24.    WHEREAS, Plaintiffs maintain that the Defendants failed in their ministerial or mandatory duties, pursuant to HAVA and O.C.G.A. 21-2-368(c), when they were again informed in December of 2020, that GA's voting systems and processes were not able to be safely or accurately used. A report, in which multiple issues regarding the safety and accuracy of GA's electronic voting systems, was submitted to Defendants in mid-December 2020. This report (see Exhibit C) was authored by Honorable William T. Ligon, Chairman of the GA Senate Judiciary Committee, Senator, District 3, and was derived from a hearing held by the GA Legislature's Judiciary Committee on December 3rd, 2020, in which multiple safety and accuracy issues were ascertained that clearly meets the very low bar of "*appear*" as used in O.C.G.A. 21-2-368(c). The Honorable William T.

Ligon professed within this report that,

> "The oral testimonies of witnesses on December 3, 2020, and subsequently, the written
> testimonies submitted by many others, provide ample evidence that the 2020 Georgia
> General Election was so compromised by systemic irregularities and voter fraud that it
> should not be certified."

Plaintiffs argue that the Defendants, under color of office or authority, have failed

to perform or have negligently performed their ministerial duties, and/or have

egregiously abused their discretionary duties, and have demonstrated an utter

disregard of Federal and State laws and Constitutions, thus depriving and

disadvantaging the Plaintiffs in their ability to maintain the effectiveness of their

vote.

25.   WHEREAS, Plaintiffs maintain that the circumstances, being spoken of

above by Judge Totenberg and the Honorable Mr. Ligon, have neither changed nor

been addressed by the Defendants for the last four years, and in fact, Defendants

have refused to do any updates or upgrades on GA's computerized/electronic voting

systems until 2025. Since the above ruling in *Curling* by this Court, the situation

has become even more dire in that GA's electronic/computerized voting systems

not only illegally contain parts made in China, but that Dominion Voting Systems

uses Huawei as their cloud services provider, thus the Defendants, by utilizing

this illegal voting system, are perpetuating a National Security Threat and are in

violation of Federal (see Federal Information Security Management Act ("FISMA")

and Executive Order ("EO") 13873 signed by President Trump and which

President Biden re-authorized through May 19th, 2025) and State (see O.C.G.A. 21-2-300, and O.C.G.A. 21-2-368(c)) laws. Huawei, in fact, is *prohibited* for use in the US for Critical Infrastructure, which elections equipment and processes were characterized as by the Obama Administration on January 9th, 2017.

26.   WHEREAS, Plaintiffs allege that the Defendant Raffensperger ("Raffensperger") is responsible for the ongoing violation of failing to properly maintain GA's voter registration database which has disadvantaged the Plaintiffs in the effectiveness of their vote. HAVA Section 303 (a)(2)(B)(iii) is clear in stating,

*"The list maintenance performed under subparagraph (A) shall be conducted in a manner that ensures that – iii. Duplicate names are eliminated from the omputerized list.",* and *"For purposes of removing names of ineligible voter from the official list of eligible voters – by reason of the death of the registrant under section 8(a)(4)(A) of such Act (42 U.S.C. 1973gg-6(a)(4)(A)), the State shall coordinate the computerized list with the State agency records on death."*

Plaintiffs assert that Raffensperger is not properly cleaning duplicates, deceased, or illegal voter registrations from GA's voter registration database. On the contrary, it appears those that are removed, are illegally and purposefully being added back, resulting in the commissioning of Identity Theft (see Exhibit B, Tab 2). Plaintiffs' analysis shows that not only is Raffensperger not cleaning duplicates off the voter registration database, which he is required to perform pursuant to Federal law, it appears the duplicates are being fraudulently reissued and double votes are being credited using them (see Exhibit B, Tab 2). There is no colorable argument or *'precise interest'* the Defendants can put forth that could possibly

defend their complete failure in the maintenance of, or for their utilization of a
system that allows for the criminal manipulation of, GA's voter registration
database (see National Voter Registration Act ("NVRA"), HAVA, 18 USC 611, 52
USC 10307(c), 52 USC 10308 *et.seq.*, 52 USC 10310(c), 52 USC 20501, 52 USC
21083, 52 USC 21144, O.C.G.A. 21-2-216(g)). Therefore, it is of vital public interest
for this Court to grant this Injunction and Declaratory Judgment to stop these
ongoing violations by the Defendants, as well as to protect the Plaintiffs from
being disadvantaged in the effectiveness of their vote, and to prevent the dilution
and deprivation of their right to vote.

27.   WHEREAS, Plaintiffs allege that their evidence seems to prove that
Raffensperger, the responsible State officer as mandated by Federal law, has
failed to perform or has negligently performed his ministerial duty in the
maintenance of GA's voter registration database. Plaintiffs' evidence shows:
synthetic identity theft (a combination of real and false information combined to
create a voter registration identification ("ID") number for a fake or phantom
person); re-issuance of voter registration ID numbers that have been previously
canceled for cause (moved, deceased, felons, etc.); manipulation of the registered
voters contained within GA's voter registration database within the time
prohibited by law; and manipulation of the dates supposedly lawful voters
registered to vote. These actions, or the failure to act, by Raffensperger are in

violation of NVRA Sections 6, 8 and 12, HAVA, 52 U.S.C. 10307(a), (c), and 52

USC 21083. (See Exhibit B, Tab 2, entries A.1 thru A.4 for just a few examples of

the manipulation of Citizen's Identities). Pursuant to these Federal laws,

Raffensperger is directly responsible for ensuring the voter registration database

is maintained and contains only valid, lawful voters. Plaintiffs maintain that the

Defendants, as the required signatories of Federal elections certification for GA,

are responsible for ensuring only lawfully registered voters participated prior to

the attestation required on these certifications. The perpetuation of these schemes,

which appear to be intentional, creates the dilution of, and disadvantages the

Plaintiffs' maintaining the effectiveness of, their right to vote, effectuates illegal

search and seizure, and is a violation of right to privacy, rights which are

protected by the First, Fourth and Fourteenth Amendments of the US

Constitution and Articles I and II of the Georgia Constitution, Federal and State

laws. Therefore, it is in the public interest that this Court grant this Injunction

and Declaratory Judgment.

28.   WHEREAS, Plaintiffs maintain that the Defendants are allowing the

Plaintiffs and the People of GA's ("PII") to be illegally shared with third parties

and adversarial foreign actors via GA's voter registration database and the

Electronic Registration Information Center ("ERIC"). (see The Privacy Act of 1974,

52 USC 21083 (a)(B)(3), O.C.G.A. 50-18-72 (a)(20)(B)(iii), EO 13694, EO 13873, EO

14034, O.C.G.A. 50-18-72 (a)(21), and Exhibit B, Tab 1, pages 37 and 38).

Plaintiffs have provided proof to this Court that Raffensperger was aware of, and

is allowing for, the bulk transfer of Plaintiffs' and the People of GA's PII to the

Center for Election Innovation and Research ("CEIR") via ERIC. ERIC personnel

admitted to sharing all PII in a Written Request for Admissions, which was

deemed admitted, in Waupaca County, WI case: Peter Bernegger v. Electronic

Registration Information Center, Inc., no. 2023CV000157, 6-21-2023 filing date.

Within the Admissions by ERIC in the WI case, they admitted to sharing: full

social security numbers; full dates of birth; full driver's license numbers; full

addresses; how people are registered; and whether or not they have voted; with

CEIR. Plaintiffs have also provided evidence to this Court proving that ERIC bulk

transfers all PII to China, Facebook, Alibaba, Craigslist, and a plethora of

pornographic websites (see Exhibit B, Tab 1, pages 45 and 46).

29.   WHEREAS, Plaintiffs maintain that providing outside sources with

Plaintiffs' private identifying information ("PII"), is in violation of 52 USC 21083

(a)(B)(3), O.C.G.A. 50-18-72 (a)(20)(B)(iii), O.C.G.A. 50-18-72 (a)(21), and the

Privacy Act of 1974. O.C.G.A. 50-18-72 (a)(20)(B)(iii) reads:

*The disclosure of information to a public employee of this state, its political
subdivisions, or the United States who is obtaining such information for administrative
purposes, in which case, subject to applicable laws of the United States, further access to
such information shall continue to be subject to the provisions of this paragraph,* and
O.C.G.A. 50-18-72 (a)(21) which reads,

*Records and information disseminated pursuant to this paragraph may be used*

*only by the authorized recipient and only for the authorized purpose. Any person who obtains records or information pursuant to the provisions of this paragraph and knowingly and willfully discloses, distributes, or sells such records or information to an unauthorized recipient or for an unauthorized purpose shall be guilty of a misdemeanor of a high and aggravated nature and upon conviction thereof shall be punished as provided in Code Section 17-10-4. Any person injured thereby shall have a cause of action for invasion of privacy,* and The Privacy Act of 1974 states,

*"no agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains".*

Plaintiffs allege that these violations, which are seemingly being perpetrated with

Raffensperger's knowledge, also deprives them of their constitutionally protected

rights under the Fourth Amendment, their constitutionally protected right to

privacy under the GA Constitution (see *Ambles v. State, 259 Ga. 406, 408 (2)(b)*

*(383 SE2d 555) (1989),*

*"In this state, privacy is considered a fundamental constitutional right and is 'recognized as having a value so essential to individual liberty in our society that [its] infringement merits careful scrutiny by the courts." ("Ambles");* and

*King v. State, 272 Ga. 788, 535 S.E.2d 492 (2000),"Because the right of privacy is itself premised upon the due process clause of our constitution, that concept is necessarily subsumed into a constitutional challenge on privacy grounds. Thus, the privacy issue having been raised in the trial court, the principles of due process are applicable on appeal." ("King").*

30.   WHEREAS, Plaintiffs maintain, and this Court agrees (see Exhibit A), that

the illegal insertion of the QR/2d bar code, which is what is interpreted by GA's

voting system tabulators to 'count' votes, renders our ballots and votes inauditable

in violation of 52 USC 21081(a)(1)(B)(i) and HAVA. The Plaintiffs, and even those

responsible for auditing our elections, are unable to verify *'in a private and*

*independent manner'* that the *'human readable summary'* of votes which prints on

the ballots are what the tabulator is crediting. No person in the entire, required chain of custody of the ballots in GA has the QR/2d decryption key. Only Dominion Voting Systems has the decryption key and thus the Defendants have illegally and unconstitutionally ceded control over the outcome of our elections to the private corporation known as Dominion Voting Systems. Defendants, apparently, also ceded all responsibility for cybersecurity assessments of GA's voting system to Dominion Voting Systems in 2019 per Merritt Beaver's (GA SoS office Chief Cybersecurity and Information Security Officer), testimony, during *Curling v. Raffensperger* closing arguments, on January 16, 2024.

31. WHEREAS, Plaintiffs maintain that Defendants allowing the private corporation that provides GA's voting systems to be their own arbiter of how safe and secure their equipment is, is not only an egregious conflict of interest and well beyond the authority the Defendants were granted by the GA Legislature, but is in violation of Federal law due to Dominion Voting Systems using Huawei, a federally banned equipment and services provider, for their cloud services, Plaintiffs have also provided proof to this Court that Dominion Voting Systems admitted, "*when we are sending election results through internet (from tabulators or RTM), this is not closed system any more.*" (see Exhibit B, Tab 1, page 18). This proves the Plaintiffs are correct regarding GA's election systems being illegally connected to the internet, that the Defendants have allowed for GA's voting system to be rendered insecure, and the results of the elections to be questionable.

32. WHEREAS, Plaintiffs maintain, and this Court agrees pursuant to Judge

Totenberg's interim ruling in *Curling* (see Exhibit A), that the Defendants are

utilizing a voting system that does not allow for ballots to print that are compliant

with Federal and State laws. Defendants were informed that GA's

electronic/computerized voting systems did not allow for lawful, official ballots to

print in October of 2020, yet have continued these ongoing violations in every

election since. See,

   *Curling,"...should allow voters to cast ballots that are solely counted based on their voting designations and not on unencrypted, humanly unverifiable QR codes that can be subject to external manipulation and does not allow proper voter verification and ballot vote auditing.".* (Exhibit A)

The Defendants completely disregarded the Judge's ruling, putting them in direct

violation of 2 USC 9, 52 USC 10307(a), 52 USC 21081(a)(1)(B)(i), and O.C.G.A. 21-

2-280, 284, 285 and 480. Plaintiffs allege that the utter disregard by the

Defendants of the aforementioned ruling, Federal, and State laws, is causing the

Plaintiffs to be individually disadvantaged in maintaining, and ensuring, the

effectiveness of their vote, as well as being deprived of their right to vote, since

only votes on legally authorized ballots of the States are considered as having any

effect for elections.

33. WHEREAS, Plaintiffs assert that O.C.G.A. 21-2-284 *et. seq.*, 21-2-285 *et. seq.*,

and 21-2-480 *et. seq.* specifically lay out the format of, and what exactly is to

appear on a ballot for it to be considered an 'official', and therefore legal, ballot.

Nowhere in these 'Form of Official Ballot' statutes is there an allowance for the insertion of a printed 2d/QR bar code. In fact, these statutes specifically state,

"*marks made in violation of these directions shall be disregarded in the counting of the votes cast.*", and "*the insertion of such names* (meaning candidate names) *outside such section or by the use of a sticker, paster, stamp, or other printed or written matter is prohibited.*" (emphasis added).

The QR/2d bar code is not human readable, and the interpretation of that code is what the GA voting systems use to illegally 'count/tabulate' votes. The QR/2d bar code, which can only be described as a '...*stamp, or other printed matter*', purportedly contains the names of the candidates selected by the voter, though GA law prohibits this as detailed above. The QR/2d bar code does not permit the Plaintiffs, the People of GA, nor those responsible for audits, to verify *'in a private and independent manner'*, as required pursuant to 52 USC 21081, that the candidates which were selected by the voter are actually who will receive the credited vote before the ballot is cast. The QR/2d bar code also prevents those responsible for auditing and ensuring the accuracy of GA's elections, the ability to verify whether the voter intent and total tabulation of votes were properly recorded since Defendants allow only Dominion Voting Systems to have the decryption key. The US Supreme Court and 5th Circuit held,

"*The voter was entitled to understand that the ballot was legal as presented, and in thus voting it he acted upon a mistaken assumption, and this is enough to vitiate such ballots... Nothing could possibly be more important than the sanctity of the ballot. It transcends in gravity far beyond any question as to who in any given case might be entitled to a particular office." Alexander v. Ryan, supra at 583(3), 43 S.E.2d 654,* and

*"Qualified citizens not only have a constitutionally protected right to vote, but also the right to have their votes counted, a right which can neither be denied outright, nor destroyed by alteration of ballots, nor diluted by ballot box stuffing." Duncan v. Poythress, 657 F.2d 691 (5th Cir. 1981).*

34.   Plaintiffs assert that the Defendants are acting in contravention of Federal and State laws and Constitutions, by allowing the printing of a mark, in the form of a the QR/2d bar code that purportedly contains the names of the voter's selected candidates in which '*the insertion of such names outside such section or by the use of a sticker, paster, stamp, or other printed or written matter is* **prohibited**', and then utilizing these '*marks that* **shall** *be disregarded in the counting of the votes cast*' to count/tabulate the votes on GA's ballots. Defendants are thereby depriving the Plaintiffs of their right to vote, under color of authority or office, by having voters cast unofficial, illegal ballots, which render our elections void and invalid. The GA Supreme Court also agrees with this Court and Plaintiffs' assertions and held,

*"As a matter of law, therefore, the 481 Laurens County absentee ballots did not comply with the mandate of OCGA § 21-2-284(c)." MEAD v. SHEFFIELD et al., No. S04A1982, 601 S.E.2d 99, 278 Ga. 268 (2004)* and, *"But where there is such an utter disregard of the provisions of the statute, as to an essential element of the election, by the election officials as to infect the election as a whole with the taint of illegality, such provisions can not be held directory merely, but must be held to be mandatory." Moon v. Seymour, 182 Ga. 702 (186 S.E. 744).*

35.   WHEREAS, Plaintiffs maintain that Defendants will be in violation of Federal and State laws and Constitutions if they permit ballots which are received past the time of the closing of the polls to be opened, and the votes contained upon them to be counted (see O.C.G.A. 21-2-386(a)(1)(F)), or if any votes are counted

beyond midnight on the '*set day of election*' (see 2 USC §§ 1,7 and 3 USC § 1).

Plaintiffs request this Court declare that if the Defendants do not comply with the Federal and State statutes and Constitutions, which plainly refer to '*the combined actions of voters and officials meant to make the final selection of an officeholder*' and established '*the day*' on which these actions must take place, that the elections will be rendered null and void. The US Supreme Court agrees with Plaintiffs' request in this matter and held in a 9:0 ruling,

> "*In speaking of "the election" of a Senator or Representative, the federal statutes plainly refer to the combined actions of voters and officials meant to make **the final selection of an officeholder;** and by establishing "the day" on which these actions must take place, the statutes simply regulate the time of the election, a matter on which the Constitution explicitly gives Congress the final say.", Foster v. Love, 522 U.S. 67 (1997), pp. 71-72 ("Foster")* (emphasis added).

36.   WHEREAS, Plaintiffs assert that there is no excuse, exigency, or 'emergency' situation that may be decried or declared by the Defendants as sufficient reasoning for counting votes on ballots received beyond the poll closing time of 7:00pm (see O.C.G.A. 21-2-386(a)(1)(F)), or for vote counting to exceed midnight on the 'set day of election' (see 2 USC §§ 1,7 and 3 USC § 1). Results of the election being announced past midnight on the constitutionally and statutorily mandated '*set day of election*', November 5th, 2024, whether it be due to cyber attacks or the US Postal Service ("USPS"), renders the election void, invalid and unable to be certified by the Defendants. Defendants have been given warning by the DOJ, CISA and USPS, of these possible, impending threats and issues with adequate

time to ensure that these issues are mitigated prior to election day, as is their

duty. Plaintiffs assert, and the US Supreme Court agrees (see *Foster*), that their

right to vote will be deprived or diluted, and that the election will not be able to be

certified if Defendants do not comply with the mandated '*set day of election*'. There

is *no* exigency that may be proffered by the Defendants which allows for the

suspension of the provisions of the Constitution. See,

> *Ex Parte Milligan, 71 U.S. 2 (1866), pp 120-121,"The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times and under all circumstances. No doctrine involving more pernicious consequences was ever invented by the wit of man than that any of its provisions can be suspended during any of the great exigencies of government."*

37.   WHEREAS, Plaintiffs maintain that The Elections Clause of the

Constitution, Article I, § 4, cl. 1, invests the States with responsibility for the

mechanics of congressional elections, see *Storer v. Brown,415 U.S. 724, 730*, but

grants Congress "*the power to override state regulations"* by establishing uniform

rules for federal elections. See *U. S. Term Limits, Inc.* v. *Thornton, 514 U. S. 779,*

*832-833*. These congressional rules set the date of the biennial election for the

offices of US Senator, 2 USC § 1, and Representative, § 7, and mandates holding

all congressional and Presidential elections on a single November day (see *Art.II,*

*Sect. I, cl. 4, 2 USC §§ 1,7 and 3 USC § 1*), which expires at midnight the first

Tuesday following the first Monday in November. The GA Constitution Article II,

Section I, Paragraph I (mandates our 'set day of election' to be compliant with 2

USC §§ 1,7 and 3 USC § 1), Article III, Section II, Paragraph V(c) also determines

the same 'set day of election' as the general election for the GA Assembly.

Therefore, the Defendants have a ministerial duty to protect against the

possibility of GA's elections going beyond the 'set day of election' and have had

sufficient forewarning by the Federal agencies regarding the expected cyber

attacks by Iran during our 2024 General Election cycle. The Plaintiffs argue that

by this Court granting Injunction and Declaratory Judgment for the immediate

cessation of GA's computerized electronic voting and election management

systems, the possibility of this national security threat would be prevented.

## STATEMENT OF FACTS

38.   Plaintiffs allege that the Defendants are causing them irreparable injury and

harm due to their right to vote being deprived and/or diluted as a result of the

Defendants' failure to perform, or negligent performance of, mandated or

ministerial duties, under color of office or authority, pursuant to Federal and State

laws, and in violation of the First, Fourth, and Fourteenth Amendments.

39.   It is well settled that the Elections Clause grants Congress the power to

override state regulations by establishing uniform rules for federal elections,

which is binding on the States. Defendants, as the officials required to certify that

GA's election results are *'true and accurate'*, are responsible for ensuring GA's

elections are conducted in compliance with the Federal statutes that govern them.

See *U.S. Term Limits, Inc.* v. *Thornton, 514 U. S. 779, 832-833 (1995).* See also,

   *Ex parte Siebold, 100 U. S. 371, 384 (1880), "[T]he regulations made by Congress are*

*paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative."*

40.   Plaintiffs allege that the negligent performance, or failure to perform, of the Defendants as described and evidenced throughout this Action, is creating a national security threat on a level never before seen, is causing the Plaintiffs to be individually disadvantaged in the ability to ensure the effectiveness of their vote, and is causing the deprivation, dilution, and abridgment of their rights protected under the Constitution(s). It is the duty of the courts to safeguard and defend against the deprivation or dilution of rights protected by the Constitution(s). The US Supreme Court and 5th Circuit held,

*"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.", Reynolds v. Sims, 377 U.S. at 555, 562, 84 S.Ct at 1378 1381 (quoting Wesberry v. Sanders, 376 U.S. 1, 17, 84 S.Ct 526, 535, 11 L.Ed 2d 481 (1964), Duncan v. Poythress, No. 81-7363 U.S. Ct of Appeals, 5th Circuit, Unit B 657 F.2d 691 (1981).*

41.   Plaintiffs have analyzed and provided this Court evidence in the attached Exhibits proving that GA's entire voting system, including the voter registration database, used to conduct elections in GA, is non-compliant with Federal and State laws and Constitutions and that the actions of the Defendants, under color of authority or office, are ongoing through today. Plaintiffs allege that not only have Defendants violated Federal and State election laws, but it appears crimes of identity theft, forgery, and falsified government documents are being committed as well. Raffensperger's own files, publicly available at www.sos.ga.gov , point to an

entire system of insidious corruption.  The evidence and analysis provided to this

Court by the Plaintiffs prove the structure and processes of the entire voting

system in GA is neither secure nor has the ability to claim accuracy with any

semblance of integrity.

42.    Plaintiffs, as qualified electors, have a strong interest in safeguarding the

integrity of GA's elections so as to ensure their votes are properly credited to the

candidate they have chosen. The Defendants' claimed interest of 'efficiency' does

not outweigh the burdens or irreparable injury suffered by Plaintiffs in the

deprivation of their rights to vote and to privacy. The Defendants' have no

colorable argument regarding *precise interests of the state*' that could possibly

defend the burdens imposed upon the Plaintiffs by their utilization of GA's illegal,

proven non-secure and inaccurate, computerized/electronic voting systems and

processes. This Court ruled that any allegations of infringement of voting rights

'*must be carefully and meticulously scrutinized'* due to a state having '*precious*

*little leeway in making it difficult for citizens to vote'*. See

   *Duncan v. Poythress, 515 F. Supp. 327 (N.D. Ga.), aff'd, 657 F.2d 691 (5th Cir.
   1981),"The right to vote is clearly fundamental, and is protected by both the due process
   and equal protection guarantees of U.S. Const., amend. 14. In either case, any alleged
   infringement of the right to vote must be carefully and meticulously scrutinized, for a state
   has precious little leeway in making it difficult for citizens to vote."* and

the US Supreme Court ruled a state must weigh its '*precise interests*' against the

injury asserted by plaintiffs, see

   *Anderson v. Celebreezze, 460 U.S. 780, 789 (1983), "the precise interests put forward by*

*the State as justifications for the burden imposed by its rule.",* and

*Wash. State Grange v. Wash. State Republican Party 552 U.S. 442, 441 (2008), "State and local laws that unconstitutionally burden the right to vote are impermissable.",* and

**52 USC 10310(c)(1)** definition of "vote" -- *The terms "vote" or "voting" shall include all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this chapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election.*

43.    Plaintiffs' allege that the actions, or failure to act, of the Defendants are

violating their rights protected under the Fourth Amendment, their right to

privacy, and Federal and State statutes, by illegally sharing their Private

Identifying Information ("PII") with third parties, both foreign and domestic. See

52 USC 21083 (a)(B)(3), O.C.G.A. 50-18-72 (a)(20)(B)(iii), O.C.G.A. 50-18-72 (a)

(21), EO 14034 and the Privacy Act of 1974 which states,

*"...no agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains".*

44.    Executive Order (EO) 13873, signed on May 15th, 2019, and re-authorized

through May 15th, 2025, banned tech products from China from being used in any

equipment or services deemed 'Critical Infrastructure' stating that it *"constitutes*

*an unusual and extraordinary threat to the national security..."* and that it *"poses*

*an undue risk of catastrophic effects on the security or resiliency of United States*

*critical infrastructure or the digital economy of the United States"*. Jeh Johnson,

DHS Secretary for the Obama Administration, deemed our elections and election

equipment as 'Critical Infrastructure' on January 9, 2017, thereby subjecting all elections equipment, processes, officials, and vendors to be FISMA compliant. FISMA compliance is therefore mandatory for all governmental agencies and officials, whether on a national, state or local level and by any organization that does business with governmental agencies including contractors and third-party vendors such as Dominion Voting Systems, KnowInk, ERIC and GARViS.

45.    Dominion Voting Systems utilizes Huawei as their cloud provider (Exhibit D) and, pursuant to their own email (Exhibit B, Tab 1, p. 18), admit they transmit the election results from the tabulators over an 'open network' (any 'network' connections are in violation of Federal and State laws, as shown throughout this Action). The Cradle Point routers utilized by the counties (see Exhibit D), whether to transmit voter registration database information or to transmit election results data, chips are built in, and acquired from China (Exhibit D), and the Dell Laptops used in our voting system also source parts from China. This not only renders the entirety of our elections systems a national security threat, but non-compliant with Federal law (see FISMA, HAVA, 52 USC 20971, 52 USC 21081, EAC VVSG 2.0).

46.    The selection of candidates for a general election that is concluded beyond the set date chosen by Congress, under color of state laws, rules, or regulations, is done with no act in law or in fact, is in clear violation of 2 USC §§ 1, 7 and 3 USC § 1 and renders that election void (see *Foster* pp. 71-72).  Illegally and

unconstitutionally counting votes beyond midnight on the set day of election is a

bald departure from 2 USC § 7 instructions. Thus, these actions by the Defendants

would disadvantage Plaintiffs in their ability to maintain the effectiveness of their

vote, deprive, dilute or infringe upon the their right to vote and have that vote

count for the candidate of their choice. See.

*Duncan v. Poythress, 657 F.2d 691 (5th Cir. 1981),* "*Qualified citizens not only have a constitutionally protected right to vote, but also the right to have their votes counted, a right which can neither be denied outright, nor destroyed by alteration of ballots, nor diluted by ballot box stuffing.*"

It also fosters both evils identified by Congress as reasons for passing the federal

statute. It creates a distortion of the voting process when the results of an election

can be called days, weeks or months beyond *the day of election* and federal

elections in one State can then influence election results reporting in other States.

See,

*Congo Globe, 42d Cong., 2d Sess., 141 (1871)* (remarks of Rep. Butler), "*Unless we do fix some time at which, as a rule, Representatives shall be elected, it will be in the power of each State to fix upon a different day, and we may have a canvass going on all over the Union at different times. It gives some States undue advantage....*"

47. The 5th Circuit concluded, and the US Supreme Court later affirmed that

state voting systems, laws, processes, rules and regulations are not permitted

which squarely "*conflicts with the federal statutes that establish a uniform federal*

*election day.*" (*Foster, 90 F.3d 1026, 1031 (1996), 520 U. S. 1114 (1997)*). The US

Supreme Court ruling in *Foster* determined that all vote counting must cease, and

the candidate with the majority of votes at midnight on the *set day of election* be

named the winner, no later than midnight *on* the *set day of election*. Congress

recently reaffirmed a single national *set day of election* when it enacted the

Electoral Count Reform Act ("ECRA"). Under the recent Congressional

amendment, no extension of Election Day shall be allowed unless there are '*force

majeure*' events that are considered extraordinary and catastrophic that would

justify an extension. *Foster* also supports Plaintiffs' arguments regarding the

failure of the Defendants to properly maintain the voter registration database, and

ensure that an adversarial entity's threat of cyber attacks (link to report

<u>CISA and FBI Release Joint PSA: Putting Potential DDoS Attacks During the</u>

<u>2024 Election Cycle in Context | CISA</u> ), nor issues with mail delivery by the

USPS, interfere with '*the combined actions of voters and officials meant to make a

final selection of an officeholder*' on '*the set day of election*'. See *Foster*,

> "*The Fifth Circuit's conception of the issue here as a narrow one turning entirely on the meaning of the state and federal statutes is exactly right. When the federal statutes speak of "the election" of a Senator or Representative, they plainly refer to the combined actions of voters and officials meant to make a final selection of an officeholder (subject only to the possibility of a later run-off, see 2 U. S. C. § 8) See N. Webster, An American Dictionary of the English Language 433 (C. Goodrich & N. Porter eds. 1869) (defining "election" as "[t]he act of choosing a person to fill an office"). By establishing a particular day as "the day" on which these actions must take place, the statutes simply regulate the time of the election.*"

The Attorney General of GA also determined,

> "*The term "election day", as used in the Constitution, has been construed by the Supreme Court of this state as encompassing a period of time from midnight preceding the opening of the polls until midnight succeeding the closing of the polls.*" *1965-66 Op. Att'y Gen. No. 66-13.*

48.   Plaintiffs have provided this Court with evidence (Exhibit B, Tab 1 p.5) that

Iran, in fact, *already* has access to GA's electronic voting systems. Raffensperger,

if he was not presented this evidence by his Network Analysis partners at GA

Technical College, was presented this evidence in *Lovell et. al., v. Raffensperger et.*

*al., Case Nos. S23A0087, and S23A1151, in the Supreme Court of GA.* These

disclosures disallow any arguments by the Defendants of being 'unaware of',

'unconcerned with', or how GA's voting systems are the 'safest and most secure',

when this security threat, which cannot be characterized as a 'possibility' in GA's

elections, has already been proven.

49.   Defendants are acting in violation of Federal and State laws and

Constitutions and Plaintiffs allege that they are being deprived of individualized

rights that the Constitution guarantees to them as individuals, the right to vote

for and elect the candidates of their choice. This is more than a generalized

grievance about GA's conduct of government, this is an assertion that they are

being denied the full scope of their individualized right to vote. See,

   *Baker v. Carr, 369 U.S. 186, 206, 208, 82 S. Ct. 691, 704, 705, 7 L. Ed. 2d 663 (1962),*
   *"[V]oters who allege facts showing disadvantage to themselves have standing to sue....*
   *[because t]hey are asserting `a plain, direct and adequate interest in maintaining the*
   *effectiveness of their votes', not merely a claim of `the right, possessed by every citizen, to*
   *require that the government be administered according to law....'"* (citations omitted).

## CONCLUSION

50.   THEREFORE, Plaintiffs respectfully request that this Honorable Court

grant this Injunction and Declaratory Judgment which is vital to the public

interest. The granting of this Order would stop the ongoing violations of Federal and State laws by the Defendants, would ensure Plaintiffs' votes were credited as they intended, would prevent the Plaintiffs from being disadvantaged in maintaining the effectiveness of their vote, would stop the National Security Threat caused by the Defendants' use of GA's current computerized/electronic voting and election management systems, and would stop the Defendants from diluting or depriving the Plaintiffs' rights protected under the Constitutions.

51.    Plaintiffs seek redress of their grievances to this Honorable Court, and for this Court to address their allegations of Defendants' failure and negligence in performing their public and fiduciary duties, as described throughout this Action since '*federal judicial power can redress the wrong done by a state officer misusing the authority of the State ...*'. Plaintiffs' allegations, as described throughout this Action, are founded on past and ongoing violations by the Defendants which can only be characterized as negligence, malfeasance, and misfeasance in the performance of their duties under color of law, office or authority. See,

*Marbury v. Madison*, "*But where a specific duty is assigned by law, and individual rights depend upon the performance of that duty, it seems equally clear that the individual who considers himself injured has a right to resort to the laws of his country for a remedy.*" and also in *Marbury*,

"*By the protection of the law, human rights are secured; withdraw that protection and they are at the mercy of wicked rulers or the clamor of an excited people.*"

52.    Plaintiffs respectfully request this Court grant this Order to prevent the ongoing violations of Federal and State laws and Constitutions by which the

Defendants are causing the Plaintiffs to be disadvantaged, to protect the Plaintiffs from their constitutionally secured rights being deprived, abridged or diluted, and for what should be considered as vital to the public interest. See *Duncan* and,

*Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714; Barney v. City of New York, 193 U.S. 430, 24 S. Ct. 502, 48 L. Ed. 737; Home Telephone and Telegraph Company v. City of Los Angeles, 227 U.S. 278, 33 S. Ct. 312, 57 L. Ed. 510."Under the Fourteenth Amendment the federal judicial power can redress the wrong done by a state officer misusing the authority of the State with which he is clothed; under such circumstances inquiry whether the State has authorized the wrong is irrelevant."*

53.    In order to obtain equitable relief for future elections, Plaintiffs respectfully request this Honorable Court grant their following Prayer for Relief, as was requested within their Emergency Interlocutory Injunction or Temporary Restraining Order, and prayer to make permanent.

## PRAYER FOR RELIEF

I.    That the Defendants immediately cease the use of the current electronic voting system, electronic election management systems, computerized/electronic poll books and any automated updates of voter registration databases in GA;

II.    That the Defendants immediately, due to the inability of the current voting systems to be safely and accurately used, direct the use of statutorily compliant, stubbed paper ballots to be hand-marked and hand-counted in the precincts in which they are cast throughout GA, except for the allowance of the machine statutorily required for use by disabled persons;

III.    That the Defendants immediately direct the County elections officials to

have enough Official paper ballots, pursuant to O.C.G.A. 21-2-284, 285 and 480, available for the 2024 General Election for each qualified, active, registered voter in their precincts (see O.C.G.A. 21-2-290), which are to be hand-marked and hand-counted in the precincts in which those votes are cast;

IV.   That the Defendants immediately, due to the warning of Distributed Denial of Service ("DDoS") attacks issued by the Cybersecurity and Infrastructure Security Agency ("CISA") expected to occur during the 2024 General Election cycle, direct the use of hand-marked, hand-counted in the precinct, paper ballots by all qualified electors, except for the statutorily required machine needed for use by disabled persons;

V.   That the Defendants immediately cease the use of any computerized/electronic voter registration databases and automated updates of those systems, move to paper poll book check-in and require all electors produce valid identification and proof of citizenship as is required by law in order to register to vote;

VI.   That the Defendants immediately direct the County elections officials to have enough paper poll books printed for use in each precinct to allow for multiple voters to check-in simultaneously;

VII.   That the Defendants direct that any and all votes contained on ballots marked by a Ballot Marking Device be hand-counted, from the original cast ballots

and not the ballot images, in the precincts in which they were cast;

VIII.   That the Defendants direct the hand-counted in the precinct vote totals and election results to be phoned in by the precinct supervisors to the county's Elections, or Board of Elections, supervisor who will then phone in the county results to the Secretary of State's office;

IX.   That the Defendants direct that these results be prominently posted at the precincts and county's Board of Elections offices, and websites if available, and on the Secretary of State's website so the Plaintiffs and qualified electors of GA have the ability to compare and ensure all vote totals are accurately reflected;

X.   That the Defendants be directed, and direct the county Boards of Elections or Elections Supervisors, that no election certification shall be signed without the votes contained on the original cast ballots (not the ballot images) being hand-counted and compared to the ballot and vote totals of the electronic voting system if those systems are used;

XI.   That the Defendants direct the county Elections Supervisor or Boards of Elections, and this Court direct the Defendants, that no election certification shall be signed without the reconciliation of total original cast ballots contained within the tabulators (not the ballot images) and the total number of qualified voters that were checked in to the precincts if electronic voting systems are used;

XII.   That the Defendants be directed by this Court to immediately cease the use of the electronic voting and management systems based on the expected cyber

threats, and that the receipt of ballots beyond the time of the polls closing,

counting of votes and failure to name a winning candidate based upon the

candidate with the majority of the votes by midnight on the 'set day of election' is

improper, illegal and unconstitutional and will thereby void that election.

Respectfully submitted this 10th day of October, 2024

## Attorneys for Plaintiffs – Lori Tullos and Virginia McFaddin

Lori Tullos, Pro se
2011 Cedar Grove Rd
Buckhead GA 30625
ph:(256) 270-6336
email: f8d2b@yahoo.com

Lori Tullos, Pro se Plaintiff
signed under penalty of perjury,

Virginia S. McFaddin
110 Tuell Court
Madison GA 30650

Virginia S. McFaddin, Pro se Plaintiff
signed under penalty of perjury,

(Notary Seal)

Notary Public Signature

Commission Expiry Date

36.